UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                        )
TRENDA TAYLOR, and                      )
THE RHODE ISLAND COMMISSION             )
FOR HUMAN RIGHTS,                       )
                                        )
      Plaintiffs,                       )
                                        )
          v.                            )   C.A. No. 17-117 WES
                                        )
NATIONAL INVESTMENTS, LTD.,             )
ET AL.                                  )
                                        )
      Defendants.                       )
_____)


## MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

     Plaintiff Trenda Taylor, joined by the Rhode Island
Commission for Human Rights, brings claims under the Fair Housing
Act and related statutes,[1] alleging that Defendants discriminated
against her because of her race, and then retaliated against her
when she complained about that discrimination.  Am. Compl. ¶ 1,
ECF No. 2.  Before the Court are cross-motions for summary
judgment, ECF Nos. 47, 50, 52.  Specifically, Plaintiff has moved
for partial summary judgment as to liability on her claims of

_____
     [1] Specifically, she brings suit under:  (1) the Fair Housing
Act (FHA), 42 U.S.C. §§ 3601–3631; (2) the Rhode Island Fair
Housing Practices Act (RIFHPA), R.I. Gen. Laws §§ 34-37-1 to -11
(2021); (3) Title VI of the Civil Rights Act of 1964 (Title VI),
42 U.S.C. §§ 2000d to 2000d-7; and (4) the Rhode Island Civil
Rights Act of 1990 (RICRA), R.I. Gen. Laws §§ 42-112-1 to -2.

retaliation (Counts III and IV) and her claim that Defendants violated the regulations implementing 42 U.S.C. 1437f (Count VII). Pl. Mot. Summ. J. 1, ECF No. 47.  Defendants deny any wrongdoing. They have moved for summary judgment on all counts and for Plaintiffs to pay their attorneys' fees. Defs.' Mot. Summ. J. 1, ECF No. 52.

For the reasons explained below, Plaintiffs' Motions for Partial Summary Judgment, ECF Nos. 47, 50, are DENIED.  Defendants' Cross-Motion for Summary Judgment and for Attorneys' Fees, ECF No. 52, is GRANTED as to Count VII, but otherwise DENIED.

I. Background

   A. Section 8 Housing Program

Ms. Taylor resides at the Elms Apartments, where her rent is subsidized through the Federal Project-Based Section 8 Rental Assistance Program (Project-Based Program).  Pl.'s Statement Undisputed Facts ("Pl.'s SUF") ¶¶ 1, 15-20, ECF No. 48; Defs.' Statement Further Undisputed Facts ("Defs.' SFUF") ¶ 234, ECF No. 51-36.  As a beneficiary of the program, she must pay a designated percentage of her income or a minimum rent of twenty-five dollars, whichever is higher.  24 C.F.R. §§ 5.628, 5.630 (2022).  Under a hardship exemption, her rent can be further reduced to zero.  Pl.'s SUF ¶ 89; 24 C.F.R. § 5.630(b).  The government then supplements this contribution according to contracts with private property owners, like the corporate Defendants here, making them recipients

of federal funds for the purposes of Title VI of the Civil Rights act of 1964.  See Pl.'s SUF ¶¶ 17-21.

According to both Plaintiff's lease and the governing regulations, Defendant National Investments, which owns and operates the Elms, must determine her required monthly rent contribution each year through a process called Annual Recertification.  Pl.'s SUF ¶¶ 24, 27; Defs.' SFUF ¶ 234; 24 C.F.R. §§ 5.657(b), 880.603(c).  Should Plaintiff's income decrease mid-year or her family composition change, she is entitled to request an Interim Recertification to adjust her monthly rent contributions.  Pl.'s SUF ¶¶ 26-27; Defs.' SFUF ¶ 236; 24 C.F.R. § 5.657(c).

B. Ms. Taylor's Interim Recertification

In 2015, Ms. Taylor's annual recertification established her rent to be $129 per month, beginning March 1 of that year.  Pl.'s SUF ¶ 25; Defs.' SFUF ¶ 235.  Two months later, she lost her job. Pl.'s SUF ¶ 28; Defs.' SFUF 237.  On June 9, 2015, Plaintiff met with Ms. Heather Paschoal, an employee of National Investments, and Defendant Leesa McCarthy, property manager of the Elms, to answer questions and fill out the necessary paperwork for an interim recertification.  Pl.'s SUF ¶¶ 35-36, 47; Defs.' SFUF ¶ 247.  A dispute arose over Plaintiff's answer as to how she intended to pay rent.  Pl.'s SUF ¶¶ 39-51; Defs.' SFUF ¶¶ 249-250. Plaintiff recorded her view of the incident on one of the forms,

writing:  "I am currently being harassed while filling out interim paperwork due to job layoff on May 26 . . . ongoing discrimination for over a year now.  Leesa McCarthy is harassing questioning me about future rent [payments].  Verbally arguing with me and twisting my words."  Pl.'s SUF ¶ 61.  Defendants also memorialized their version this meeting in writing through a "Memo to File" written by Ms. Paschoal.  Id. ¶ 67.  That memo describes Ms. Pachoal's attempt to convince Plaintiff to fill out the form again, without the written comments, as well as Defendants' concern that Ms. Taylor had an undisclosed bank account or other source of income.  Id. ¶¶ 69-70; Defs.' Opp'n Pls.' Mot. Summ. J., Ex. E., ECF No. 51-6.  Plaintiff refused the new form and submitted a notarized copy of the original the next day, comments included. Pl.'s SUF ¶¶ 70-71.  This conflict was only the beginning, as various disputes between the parties continued throughout the summer.[2]

C.  Annual Recertification and its aftermath

In November 2015, Plaintiff met with Ms. Pashoal again, this time for her Annual Recertification.  Pl.'s SUF ¶ 100; Defs.' SFUF

---

[2] For example, Ms. Taylor filed a restraining order against Defendant McCarthy in Rhode Island Superior Court, which was denied.  Defs.' Statement Further Undisputed Facts ("Defs.' SFUF") ¶ 254, ECF No. 51-36.  She also filed a request for a hardship exemption, which Defendants denied.  Pl.'s Statement Facts ("Pl.'s SUF") ¶¶ 88, 96, ECF No. 48; Defs.' SFUF ¶¶ 256, 259.  In August 2015, Defendants sent Ms. Taylor a "Notice of Proposed Termination of Tenancy for Nonpayment of Rent."  Pl.'s SUF ¶¶ 93-95.

265.   Ms. Tayor's rent had been neither reduced nor paid since June.  Pl.'s SUF ¶¶ 34, 109.  At the meeting, she again reiterated the claims of racial discrimination, both verbally and on the forms themselves, writing:  "Rent was never lowered from May 2015. Lawyer gave form.  Discrimination color.  Discrimination.  Color Discrimination."  Id. ¶¶ 103-104.  Ms. Paschoal terminated the interview, allegedly after Ms. Taylor attempted to pull paperwork out of her hands while accusing her of color discrimination. Defs.' SFUF ¶¶ 270-271.

Four days after the unsuccessful Annual Recertification, National Investments sent Plaintiff a Notice of Non-compliance which gave her thirty days to cure various purported lease violations, lest she be evicted.  Pl.'s SUF ¶¶ 110-111; Am. Compl. Ex. Q, ECF No. 2-1.  Those listed violations included writing "irrelevant and inappropriate comments on various HUD-mandated forms," problems with the repair and cleanliness of her apartment revealed by a recent inspection, and an illicitly kept pet cat. Am. Compl. Ex. Q.  On November 18, 2015, National Investments filed an eviction action based on the November Non-compliance notice and previous demand letter.  Pl.'s SUF ¶ 112.

On December 4, 2015, Ms. Taylor entered the Elms Apartment's management office without an appointment seeking to complete the paperwork for her Annual Recertification and inquiring as to why her rent had never been reduced after she lost her job.  Id. ¶ 118.

She secretly recorded a portion of the interaction. Id. ¶ 199.  In the conversation, Defendant Leesa McCarthy made clear she would not be allowed to complete her paperwork so long as she was accusing the staff of racial harassment and discrimination, and eventually convinced Plaintiff to leave on the promise that she would call her to schedule a later appointment.  Pl.'s SUF, Ex. 14, ECF No. 48-15.  After Plaintiff left, Ms. McCarthy called the police, complaining of trespass and describing Plaintiff's behavior as "volatile and threatening." Pl.'s SUF, Ex. 15, ECF No. 48-16.  She sought a temporary restraining order which would bar Plaintiff from the management office.  Id.

On January 19, 2016, Plaintiff filed a "housing discrimination charge" with the Rhode Island Commission for Human Rights (RICHR).  Pl.'s SUF ¶ 135.  Six months later, RICHR sent a probable cause letter outlining its preliminary findings to Defendants and seeking evidence from them.  Amend. Compl. Ex. W, ECF No. 2-1. On August 12, 2016 RICHR issued a determination concluding "the evidence submitted to the Commission supports the complainant's allegations that she was treated in a less favorable manner than similarly-situated white tenants" and that Plaintiff "is now in danger of losing her housing as a result of discrimination and retaliation by the [Defendants]."  Pl.'s SUF Ex. 19 at 7-8, ECF No. 48-20.  It also concluded that Defendant McCarthy's account of the December 4 incident "is false," and that

"Ms. McCarthy obtained a no contact order under false pretenses." Id. at 7-8.  RICHR joins this suit as a Plaintiff.  Am. Compl. 1.

Defendants first two eviction actions against Plaintiff were consolidated and prosecuted for three years.  Pl.'s SUF ¶¶ 112, 151, 170.  On August 23, 2018, they were dismissed with prejudice by the Rhode Island District Court.  Id. ¶ 170.  Defendants' appeal from that decision was dismissed by the Rhode Island Superior Court on January 4, 2019.  Id. ¶ 173.  On December 21, 2020, Defendants filed a third eviction action against Plaintiff for non-payment of rent; it was dismissed with prejudice on February 18, 2021.  Id. ¶¶ 175-176.

II. LEGAL STANDARD

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" for purposes of the summary judgment standard "if the evidence of record permits a rational factfinder to resolve it in favor of either party."  Borges ex rel. S.M.B.W v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). Similarly, a fact is "material" if its "existence or nonexistence has the potential to change the outcome of the suit."  Id. at 5.

The moving party bears the initial burden of informing the trial court of the basis for its motion for summary judgment and identifying the portions of the pleadings, depositions, answers to

interrogatories, admissions, and affidavits, if any, that demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden shifts to the nonmoving party, who must, with respect to each issue on which it would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in its favor. Id. at 325; DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). On cross-motions the Court performs this analysis in both directions, asking "whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (quoting Wightman v. Springfield Terminal Ry., 100 F.3d 228, 230 (1st Cir. 1996).

III. DISCUSSION

  A. The Discrimination Counts

    1. Legal Framework

    Ms. Taylor asserts Defendants discriminated against her because of her race and color when they refused to reduce her rent during her Interim and Annual Recertifications, and therefore violated the anti-discrimination protections of four separate statutes: (1) the Fair Housing Act (FHA), 42 U.S.C. §§ 3601-3652 (Count I); (2) the Rhode Island Fair Housing Practices Act (RIFHPA), R.I. Gen. Laws §§ 34-37-1 to -11 (2021) (Count II); (3) Title VI of the Civil Rights Act of 1964 ("Title VI"), 42

U.S.C. §§ 2000d to 2000d-7 (Count V); and (4) the Rhode Island Civil Rights Act of 1990 (RICRA), R.I. Gen. Laws §§ 42-112-1 to -2 (Count VI). Defendants, but not Plaintiff, have moved for summary judgment on each of these counts. They contend that there is no genuine dispute of material fact as to whether their actions were discriminatory. Defs.' Mem. Supp. Mot. Summ. J. 3-10, 17-18, ECF No. 54. The Court disagrees.

The FHA makes it illegal to "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Similarly, the RIFHPA prohibits an owner of property or their agent to "directly or indirectly, discriminate against any individual because of his or her race [or] color . . . in the terms, conditions, or privileges of the sale, rental, or lease of any housing accommodation or in the furnishing of facilities or services in connection with it." R.I. Gen.Laws § 34-37-4(a).

Title VI is broader, providing that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity

receiving Federal financial assistance."[3] 42 U.S.C. § 2000d.  RICRA is similarly sweeping, prohibiting discrimination on the basis of race and color in transactions involving real property and granting to all people the "full and equal benefit of all laws and proceedings for the security of persons and property."[4]

Both Rhode Island Statutes are interpreted and construed with reference to their federal counterparts.  Colman v. Faucher, 128 F. Supp. 3d 487, 491 n.8 (D.R.I. 2015) ("The Rhode Island Supreme Court analyzes [RICRA] claims using substantive federal law from analogous causes of action."); Town of Cumberland v. Susa, No. PC 01-3726, 2007 WL 4357113 (R.I. Super. Ct. Nov. 2, 2007) (citing Newport Shipyard, Inc. v. R.I. Comm'n for Hum. Rts., 484 A.2d 893, 897-98 (R.I. 1984)) (construing RIFHPA by considering federal interpretations of the FHA).  Specifically, for claims of discrimination based on indirect evidence, all four statutes

---

[3] The parties do not dispute that the corporate defendants here receive federal funding through the Project-Based Section 8 Program.  Pl.'s SUF ¶ 17.

[4] In relevant part, section 42-112-1(a) provides:
All persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestral origin, have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and are subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
R.I. Gen.Laws § 42-112-1(a).

utilize the familiar three-step burden-shifting framework that originated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Caron v. City of Pawtucket, 307 F. Supp. 2d 364, 369 (D.R.I. 2004) (citing Neithamer v. Brenneman Prop. Servs., Inc., 81 F. Supp. 2d 1, 3-4 (D.D.C. 1999)) (FHA); R.I. Comm'n for Hum. Rts. v. Graul, 120 F. Supp. 3d 110, 118 n.10, 123-24 (D.R.I. 2015) (RIFHPA); Freeman v. Fahey, 374 F.3d 663, 666 (8th Cir. 2004) (Title VI); DeCamp v. Dollar Tree Stores, Inc., 875 A.2d 13, 25 (R.I. 2005) (RICRA).

Because Ms. Taylor brings indirect evidence of disparate treatment, the inquiry for Counts I, II, V, and VI distills to a single, three-step test. At the first step of the inquiry, Plaintiff has the burden to establish a prima facie case of discrimination. McDonnell Douglas Corp., 411 U.S. at 802-03. To do so, she must show she was "rejected under circumstances which give rise to an inference of unlawful discrimination." Caron, 307 F. Supp. 2d at 369 (quoting Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 253 (1981)). This inference can be raised by showing: (a) proof of membership in a protected group, (b) eligibility for a housing-related benefit, (c) denial of that benefit, and (d) the conferring of the benefit to someone outside the protected class. See Graul, 120 F. Supp. 3d at 123 (citing Alexander v. Riga, 208 F.3d 419, 430 (3d Cir. 2000)); see also Kosereis v. Rhode Island, 331 F.3d 207, 214 (1st Cir. 2003).

11

At the second step of the analysis, the burden shifts to
Defendants to demonstrate a legitimate, non-discriminatory reason
for their decisions.  McDonnell Douglas Corp., 411 U.S. at 802-
03.  If they come forward with a race-neutral reason, Ms. Taylor
bears the burden at the final step to demonstrate that Defendants'
proffered reason is pretext or unworthy of credence.  Id. at 804.
For this third step, at summary judgment, "[a]ll a [party] has to
do is raise a genuine issue of fact as to whether discrimination
motivated the adverse . . . action." Dominguez-Cruz v. Suttle
Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000) (quoting Olivera
v. Nestle Puerto Rico, Inc., 922 F.2d 43, 50 (1st Cir. 1990)).

2. Plaintiff's Claims of Discrimination

Plaintiff has made her prima facia showing of disparate
treatment.  It is undisputed that she is a member of a protected
class.  It is clear she was facially eligible for, but denied, an
interim reassessment and potential reduction of her rent.  Most
importantly, she brings evidence that two otherwise similarly
situated white women received interim or annual recertifications
without incident, despite having left multiple questions blank on
the relevant forms.  Pl.'s SUF ¶¶ 74-83; Pl.'s SUF Ex. 7, 8, ECF
Nos. 48-8, 48-9.

In response, Defendants point to their legal obligations to
verify Ms. Taylor's income, and her reciprocal obligations to
provide the requested information as facially non-discriminatory

12

reasons for failing to process her recertification paperwork. Defs.' Mem. Supp. Mot. Summ. J. 5-6.

As the burden shifts back to Ms. Taylor, the Court finds she has shown there is clearly a genuine dispute of material fact as to the Defendants' real reasons for their actions.  Where blank answers in the recertification paperwork of two similarly situated white women did not prevent Defendants from processing and granting their rental recertifications, questions remain as to whether their proffered race-neutral reasons are genuine.  Those questions are paradigmatic questions of material fact for a jury.  Defendants Motion for Summary Judgment as to Count I, II, V, and VI is therefore DENIED.

B. The Retaliation Counts

1. Legal Framework

The FHA does not just prohibit discrimination.  It also bars retaliation, making it "unlawful to coerce, intimidate, threaten, or interfere with any person" because they exercised their rights under the FHA.  42 U.S.C. § 3617.  The anti-retaliation provisions of RIFHPA mirror the language of the FHA precisely, but also add that "[n]o owner under this chapter or any agent of these shall discriminate in any manner against any individual because he or she has opposed any practice forbidden by this chapter."  R.I. Gen. Laws § 34-37-5.1.

"[T]he McDonnell Douglas burden-shifting rules apply to claims of retaliation pursuant to [§ 3617 of the FHA]." Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 54 (2d Cir. 2002) ("RECAP"); see also Walker v. City of Lakewood, 272 F.3d 1114, 1128 (9th Cir. 2001); Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 265-66 (E.D.N.Y. 2009). Therefore, if Ms. Taylor makes a prima facie case of retaliation, Defendants must respond with a legitimate, non-retaliatory justification for their actions. Walker, 272 F.3d at 1128; Reyes, 661 F. Supp. at 267. Plaintiff must then make a showing that Defendants' reasons are pretextual. Walker, 272 F.3d at 1128; Reyes, 661 F. Supp. 2d at 267.

Under both statutes, a plaintiff seeking to establish a prima facie case of retaliation must show that: (1) the plaintiff engaged in protected activity; (2) defendants took an adverse action; and (3) there was a causal link between the two.[5] Wetzel

---

[5] While not raised by the parties, there appears to be an open question in the First Circuit as to whether a fourth element – proof of discriminatory animus based on a protected class – is required to impose liability under 42 U.S.C. §3617. In an unpublished judgment, the First Circuit noted that it has never addressed the question, and assumed without deciding that the district court erred in requiring the discriminatory animus element. Lath v. Vallee, No. 18-2092, 2019 WL 10745175, at *1 (1st Cir. Sept. 11, 2019) (citing Wetzel v. Glen St. Andrew Living Cmty., LLC, 901 F.3d 856, 868 (7th Cir. 2018), cert. denied, 139 S. Ct. 1249 (2019)). The Seventh Circuit decision cited in Lath, (Wetzel) concluded that the anti-retaliation provisions of the FHA should be interpreted in line with a number of other civil rights acts which do not require discriminatory animus to drive the

v. Glen St. Andrew Living Cmty., LLC, 901 F.3d 856, 868 (7th Cir. 2018); Walker, 272 F.3d at 1128; Susa, 2007 WL 4357113 (construing RIFHPA to mirror FHA).

As a preliminary matter, the Court concludes that given the broad remedial goals of the statute, Ms. Taylor's verbal and written complaints of discrimination were protected conduct within the meaning of the FHA.  See RECAP, 294 F.3d at 54 (protected conduct includes "'oppos[ition to] an[] act or practice made unlawful' by the applicable anti-discrimination statutes.") (quoting 42 U.S.C. § 12203(a) (citing Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000)); see also Neudecker v. Boisclair Corp., 351 F.3d 361, 363-64 (8th Cir. 2003) (informal complaints to management treated as protected activity under FHA); Whiting v. Albek, No. ED CV 19-1542-DMG, 2020 WL 7382777, at *6 (C.D. Cal. Oct. 30, 2020) (same); 24 C.F.R. § 100.400(6)(unlawful to

---

retaliation.  Wetzel, 901 F.3d at 868 ("Like all anti-retaliation provisions, it provides protections not because of who people are, but because of what they do."); see also San Pedro Hotel Co. v. City of Los Angeles, 159 F.3d 470, 477 (9th Cir. 1998). Regulations by the Department of Housing and Urban Development also support not including the discriminatory animus element here. Those regulations require a causal connection to a protected characteristic like race or gender for coercion and threat claims, but not for retaliation.  See 24 C.F.R. § 100.400 (2022).  In light of the reasoning in Wetzel, the First Circuit's statement in Lath, the HUD regulations, and the remedial aims of the statute, the Court concludes it is appropriate to require only the first three elements for Ms. Taylor's claims of retaliation.  But see S. Middlesex Opportunity Council, Inc. v. Town of Framingham, 752 F. Supp. 2d 85, 95 (D. Mass. 2010).

"[r]etaliat[e] against any person because that person reported a discriminatory housing practice to a housing provider or other authority.").

For the causation element, there is an open question whether "but-for" causation is required in a FHA retaliation claim, or whether a plaintiff must merely show that "a causal connection exists between the protected activity and the adverse action, *i.e.,* that a retaliatory motive played a part in the adverse . . . action." RECAP, 294 F.3d at 54.  The uncertainty arises because in University of Texas Southwestern Medical Center v. Nassar, the Supreme Court held that "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action" rather than merely "a motivating factor."  570 U.S. 338, 352 (2013) (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009)).  While neither Nassar nor Gross construe the FHA, it is hard to see how or why their reasoning would not apply, given the "on account of" language in § 3617 of the FHA:

> The words "because of" mean "by reason of: on account of." Thus, the ordinary meaning of the ADEA's requirement that an employer took adverse action "because of" age is that age was the "reason" that the employer decided to act. To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision.

Gross, 557 U.S. at 176 (citations omitted) (quoting 1 Webster's Third New International Dictionary 194 (1966).  The clear majority of courts to have considered the question after Nassar have reached the same conclusion the Court does here, that retaliation claims under the FHA require a showing of but-for causation.  See, e.g., Campos v. HMK Mortg., LLC, 458 F. Supp. 3d 517, 532 (N.D. Tex. 2020) ("[I]f the Supreme Court or Fifth Circuit were to weigh the issue, this Court believes they would hold as the Supreme Court did in Nassar: the Federal Housing Act retaliation statute requires but-for causation.").[6]

2. Specific Claims of Retaliation

Ms. Taylor claims Defendants violated the anti-retaliation provisions of the FHA and RIFHPA by taking three adverse actions against her because of her complaints of racial discrimination: (1) refusing to process her recertification paperwork; (2) calling the police on her and seeking a temporary restraining order that would bar her from the management office; and (3) issuing a non-compliance notice, filing an eviction based on that notice, and

---

[6] See also In re Council of Unit Owners of 100 Harborview Drive Condo., 580 B.R. 135, 163-64 (Bankr. D. Md. 2018); Brown v. Harris Cty. Hous. Auth., No. CV H-15-2847, 2018 WL 3080880, at *12 (S.D. Tex. Jan. 11, 2018), report and recommendation adopted, No. CV H-15-2847, 2018 WL 1250445 (S.D. Tex. Mar. 12, 2018); Stokes v. Benham, No. 3:14-CV-536-JAG, 2015 WL 4139274, at *7 (E.D. Va. July 8, 2015), aff'd, 626 F. App'x 431 (4th Cir. 2015) (per curium); but see Whiting v. Albek, No. ED CV 19-1542-DMG (SHKx), 2020 WL 7382777, at *7 n.7 (C.D. Cal. Oct. 30, 2020).

prosecuting that eviction for 3 years.  Pl.'s Reply Mem. 2, ECF No. 57.  There is no question that if undertaken for a retaliatory purpose, each of these could constitute an adverse action for the purposes of the statute.  Therefore, in each potential instance of retaliation, the analysis properly focuses on the third prong of Ms. Taylor's Prima Facie case – causation.

Defendants proffer a number of non-retaliatory reasons for their actions. They reiterate their concern that Ms. Tayor's forms lacked information needed for them to verify her income as required by regulation.  Defs.' Mem. Opp'n Mot. Summ. J. 3 ("Defs.' SJ Opp'n"), ECF No. 51-38.  For the Annual Recertification on November 5, they also claim that Ms. Taylor brought a "guest;" would not sign a form authorizing Defendants to discuss financial information in front of this guest; and finally attempted to pull the paperwork out of Ms. Paschoal's hands in frustration, all of which caused them to terminate the interview.  See Defs.' Mem. Supp. Mot. Summ. J. 11.  With respect to calling the police and seeking a TRO, they claim Ms. Taylor's demeanor and behavior was so concerning they feared for their safety. Defs.' SJ Opp'n 4. For the eviction, they point to the other reasons listed in the notice, the unsanitary conditions of her apartment, her illicit pet, and her overall refusal to cooperate in the recertification processes. Id.

In response, Ms. Taylor asserts these reasons are all pretext, pointing to Defendants' own documentation to support her position that complaints of racial discrimination were the actual driving cause of Defendants' decisions. For example, after the annual recertification meeting on November 5, 2015, Defendant McCarthy wrote:

> Heather [Paschoal] told Trenda [Taylor] that it is inappropriate to write defamatory comments on our recertification paperwork and that I would need for her to resign another rent collection policy without any written comments. . . . Heather informed Trenda that if Trenda was not going to be cooperative and sign paperwork without negative comments then Heather would not be finishing the interview with Trenda.

Def.s' Statement Undisputed Facts Ex. J, at 3, ECF No. 53-10. Those "defamatory" or "negative comments" were complaints of racial discrimination. Similarly, Ms. Taylor's secret recording of her unannounced visit to the management's office on December 4, includes the following exchange:

> **Trenda Taylor:** I can't get an appointment, because of what?
> **Lessa McCarthy:** You're accusing my staff of discriminating against them (sic) and harassing them in regards to that discrimination, and I am not going to tolerate it. I am just not.

Pl.'s SUF Ex. 14 at 3.

This evidence flies in the face of the non-retaliatory reasons given by Defendants for the actions they took against Ms. Taylor. It establishes, at the very least, that there is a genuine dispute of material fact as to whether Defendants acted for the reasons

19

they provided or in retaliation for Ms. Taylor's repeated claims of discrimination. Here too, the question is for the jury. For Counts III and IV, Defendants' Motion for Summary Judgment is DENIED, and Plaintiffs' Motion for Partial Summary Judgment is likewise DENIED.

C. Count VII: Regulatory Infractions

Ms. Taylor asserts that by failing to recertify her rent or grant her a hardship exemption, Defendants violated 42 U.S.C. § 1437f and several associated regulations which create and implement the Section 8 Program. See Pl.'s Mem. Supp. Mot. Summ. J. 29-34, ECF No. 49. Because there is no express cause of action in 42 U.S.C. 1437f or its regulations, Plaintiffs can only prevail if the Court concludes the statute creates an implied cause of action. See Reyes-Garay v. Integrand Assur. Co., 818 F. Supp. 2d 414, 429-30 (D.P.R. 2011) ("We join a long line of courts that have all determined that the Housing Act does not expressly grant a private right of action. . ."); Kirby v. Richmond Redev. & Hous. Auth., No. 3:04cv791, 2005 WL 5864797, at *7 (E.D. Va. Sept. 28, 2005).

In determining whether an implied cause of action exists, Courts apply the four-factor test established in Cort v. Ash, 422 U.S. 66, 78 (1975),[7] with a special emphasis on attempting to

_____

[7] The four-part test asks the following questions: (1) Is this plaintiff a member of the class for whose "especial" benefit

discern congressional intent.  See Thompson v. Thompson, 484 U.S. 174, 189 (1988) (Scalia, J., concurring) (after Cort, congressional intent developed into determinative factor).  The Court remains mindful of the fact that "[t]he Supreme Court has come to view the implication of private remedies in regulatory statutes with increasing disfavor." Hallwood Realty Partners, LP v. Gotham Partners, 286 F.3d 613, 618 (2d Cir. 2002).  The presumption against creating an implied cause of action is especially difficult to overcome in cases like this one, where the phrasing and text of the regulation or statute focuses on what the person or entity receiving federal funds must do, as opposed to the rights created for the beneficiary.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 287 (2002) ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons.") (quoting Alexander v. Sandoval, 532 U.S. 275, 289 (2001); see also 24 C.F.R. §§ 5.630, 5.657(c) (regulating "owners" and "responsible entities").

---

the statute was passed?; (2) Is there any evidence of legislative intent, either explicit or implicit, to create or deny a private remedy?; (3) Is it consistent with the legislative scheme to imply a private remedy?; (4) Is the cause of action one traditionally relegated to state law so that implying a federal right of action would be inappropriate?  Cort v. Ash, 422 U.S. 66, 78 (1975).

With these principles in mind, the Court joins many others in holding that "[t]here exists no implied right of action under Section 1437f of the Housing Act." Reyes-Garay, 818 F. Supp. at 430; see also Banks v. Dallas Hous. Auth., 271 F.3d 605, 609–11 (5th Cir.2001); Hill v. Richardson, 7 F.3d 656, 658 (7th Cir. 1993); but see Knapp v. Eagle Prop. Mgmt. Corp., 54 F.3d 1272, 1277 (7th Cir. 1995)(finding implied cause of action to enforce § 1437f(t), but not the rest of § 1437f).

Therefore, Defendants' Motion for Summary Judgment as to Count VII must be GRANTED.

D. Attorney's Fees

Defendants' Motion for Attorneys' Fees pursuant to 42 U.S.C. § 3613(c)(2) is meritless and must be DENIED.


IV.   CONCLUSION

Because there is a genuine dispute of material fact as to whether Defendants' stated reasons for their actions are real or pretextual, summary judgment is DENIED to the Defendants on Counts I-VI, and to Plaintiffs on Counts III and IV.  There is no implied private right of action to enforce 42 U.S.C § 1437f and its accompanying regulations, so summary judgment is GRANTED to

Defendants on Count VII.   Defendants Motion for Attorneys' Fees is

DENIED.

IT IS SO ORDERED.


_____
William E. Smith
District Judge
Date:   February 2, 2022